UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SIDNEY TATE                                                                                          PLAINTIFF

v.                                    Civil No. 6:14-CV-06150

DEPUTY LACEY                                                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This is a civil rights action filed by Plaintiff, Sidney Tate, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff is not incarcerated at present.  Currently before the Court is Defendant's Motion for Summary Judgment.  (Doc. 21)

The parties have consented to the jurisdiction of a Magistrate Judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. 12)  Pursuant to this authority, the Court finds this Motion is ready for decision and issues this Memorandum Opinion.

### BACKGROUND

Plaintiff filed his original Complaint on December 10, 2014, in the Eastern District of Arkansas. (Doc. 1)  It was transferred to this District on December 22, 2014. (Doc. 2)  He alleges his constitutional rights were violated when he injured his ankle in the Garland County Detention Center ("GCDC") and was denied medical care.  (Doc. 1, p. 4-5)  Specifically, Plaintiff alleges he was taken into custody at the Garland County Detention Center on December 2, 2014.  He alleges that he fell trying to climb into a top bunk and hurt his ankle.  When he woke up the next morning, his ankle was swollen and painful, and he could not walk on it.  He informed officers at GCDC that he was in "extreme pain."  Instead of giving him treatment, he was transported to Ouachita

1

River Detention Center, but they refused to keep him because of his injury. (Doc. 1, p. 4) He was taken back to GCDC, where he spent the night. The next day, he was taken to Greene County Detention Center in Paragould, Arkansas, where he was seen by a nurse. He alleges the nurse suggested x-rays because the ankle was swollen and discolored. (Doc. 1, p. 5)

Plaintiff brought his claims against Defendants in both their official and individual capacities. (Doc. 1, p. 2) Plaintiff seeks compensatory damages in the amount of $300,000. He also seeks injunctive relief in the form of immediate medical treatment for all inmates, and immediate release for violation of the Fourteenth Amendment and Americans with Disabilities Act. (Doc. 1, p. 6)

Defendant filed his Motion for Summary Judgment on February 12, 2016. (Doc. 21) A Summary Judgment hearing was held on March 29, 2016, in order to provide Plaintiff the opportunity to present sworn testimony in response to the motion. (Doc. 27)

Plaintiff testified he did not have any official capacity claims. Plaintiff testified he asked for a medical request form when he first fell, but the officers refused to give him one. He said they told him to "hold on" because he would be transferred the next day. He asked again the next morning. They had to lift him into the van for transport.

Plaintiff testified he was at the Ouachita River Unit for about one hour in the booking area. They said they would not take him, so Defendant Lacey and the other Deputy helped him back into the transport vehicle. When they got back to GCDC, Defendant Lacey told him to fill out a medical request. Plaintiff testified he was taken to the ER at Arkansas Methodist Medical Center when he got to Greene County. He testified he was in a wheelchair for 60-70 days.

Plaintiff was asked what Defendant Lacey did to violate his rights. Plaintiff testified: "He

knew about it.  He knew I was hurting.  He and another officer had to lift me into the van.  They thought it was funny I had to crawl into the van.  I think he could have done a lot more.  He knew I was hurting, that's why he told me to file a medical request."

Plaintiff was asked if there was any lasting physical injury due to the two day delay in receiving medical treatment for his ankle.  Plaintiff testified "it did heal up."  Plaintiff testified they didn't know what it was until they took him to the emergency room.  It was swollen, and black and blue.  He added: "They didn't want to do nothing.  They tried to deny I got hurt.  I had to ride all the way to Paragould with cuffs on my hands and ankles."

Plaintiff was asked if there was anything about the two-day delay in receiving treatment which he believed caused some worsening of the injury.  Plaintiff testified it was "just knowing he wasn't going to get treatment," and "shouldn't have to go to Paragould."

## APPLICABLE LAW

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and, (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence

and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

Defendant argues Summary Judgment is appropriate for three reasons: (1) Plaintiff made no allegations to support an official capacity claim against Garland County; (2) Plaintiff's sprained ankle did not rise to the level of an objectively serious medical need; and, (3) Defendant is a transport officer, not medical staff.

### I.   No Official Capacity Claims

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir. 1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

A custom conflicting with a written policy can support an official capacity claim. *Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013). However, to establish the existence of such a custom, a plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and,
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Id.* at 828. Under this standard, "multiple incidents involving a single plaintiff could establish a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Id.*

Plaintiff testified he did not have any official capacity claims. He made no allegations in his Complaint which could be interpreted as official capacity claims. Based on the record, Plaintiff's only interaction with Defendant Lacey was the transport to and from the ADC Ouachita River Unit the day after he was booked into GCDC. Thus, even if Plaintiff's allegations could be

interpreted as a custom on the part of GCDC, a single round-trip transport would not be sufficient to establish that custom.

## II.     No Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to

criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,*

49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Defendant provided medical records from Arkansas Methodist Medical Center from Plaintiff's treatment on December 5, 2015. (Doc. 22-3) The medical notes indicate soft tissue swelling. No bruising or discoloration was noted. (Doc. 22-3, p. 2) Plaintiff's ankle was x-rayed. He was diagnosed with a sprained ankle. His treatment recommendation was elevation, ice, and an ace bandage. He was prescribed Tylenol for 10 days. He was permitted to walk and bear weight as tolerated. (Doc. 22-3, pp. 4-5) There was no medical recommendation for a wheelchair.

Plaintiff testified he asked for a medical request when he first fell, but was told to wait until the next day when he would be transferred. After he was returned to GCDC, Defendant Lacey advised him to fill out a medical request. Plaintiff did not testify that he asked for medical care before being transferred to Paragould. Jail Nurse Michelle Reeves reviewed Plaintiff's medical file for his one day detention in GCDC, and Nurse Reeves found no medical requests from him. (Doc. 22-2)

Thus, the medical evidence supports a diagnosis of a sprained ankle with some soft tissue swelling. There is no evidence to support Plaintiff's Complaint or testimony that the ankle was black and blue or discolored in any way. A sprained ankle, without some obvious serious complication, is not an objectively serious medical need. *See e.g. Bacon v. Harder*, 248 Fed. App'x 759, 761 (7th Cir. 2007) (inmate's ankle sprain did not constitute a serious medical need); *Dotson v. Correctional Med. Services*, 584 F. Supp. 2d 1063, 1068 (W.D. Tenn. 2008) (ankle

8

sprain with soft tissue swelling and inability to bear weight, but no fracture or dislocation, did not rise to the level of a serious medical need); *Doumin v. Carey*, 2008 WL 4241075, *6 (N.D.N.Y. 2008) (sprained ankle with soft tissue swelling, but no fracture or dislocation, not sufficiently serious to warrant Eighth Amendment protection).

Plaintiff also failed to provide any objective medical evidence that the delay in treatment had any lasting detrimental effect on his ankle. To the contrary, he testified that "it did heal up." When asked whether the two-day delay in treatment caused a worsening of the injury, Plaintiff alluded only to either an emotional effect or a disagreement with treatment, stating "just knowing he wasn't going to get treatment," and that he "shouldn't have to go to Paragould." Neither of these is actionable under § 1983.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** this 8th day of August, 2016.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE